# The National Sanitary Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 5737, 5738.   Promulgated January 31, 1946.

*William G. Heiner, Esq.*, for the petitioner.
*Richard L. Shook, Esq.*, for the respondent.

OPINION.

SMITH, *Judge*: The first question in issue is whether the petitioner had a deficit in accumulated earnings and profits at the close of 1936,

and, if so, the amount of such deficit. The pertinent provision of law is section 26 (c) (3) of the Revenue Act of 1936, as amended by section 501 (a) (2) of the Revenue Act of 1942, which reads:

(a) AMENDMENTS TO THE REVENUE ACT OF 1936.—

\* \* \* \* \* \* \*

(2) Section 26 (c) of the Revenue Act of 1936 (relating to credits of corporations) is amended by amending the heading to read as follows: "(c) RESTRICTIONS ON PAYMENT OF DIVIDENDS.—"; and by amending paragraph (3) to read as follows:

"(3) DEFICIT CORPORATIONS.—In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

The petitioner claims that it had a deficit in its accumulated earnings and profits at December 31, 1936, of $77,068.14. The respondent contends that on the same date it had no deficit, but accumulated earnings and profits of $19,403.68.

The respondent's contention is that, when the petitioner acquired the assets of the two Wooster companies in 1920 in exchange for its own shares of stock, there was a reorganization of corporations within the provisions of the Revenue Act of 1918, and that the combined earned surpluses of the two Wooster companies, aggregating $67,342.19, became a part of the earned surplus of the petitioner. In making this contention he relies upon *Sansome* v. *Commissioner* (C. C. A., 2d Cir.), 90 Fed. (2d) 931; certiorari denied, 287 U. S. 669, and *Georday Enterprises, Ltd.* v. *Commissioner* (C. C. A., 4th Cir.), 126 Fed. (2d) 384. The *Sansome* case involved the Revenue Act of 1921, and the *Georday* case the Revenue Acts of 1928 and 1932. The Revenue Act of 1918 does not define what is meant by a reorganization, as the later income tax acts have done. Section 201 (c) of the 1918 Act reads as follows:

(c) A dividend paid in stock of the corporation shall be considered income to the amount of the earnings or profits distributed. Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

Section 202 (b) of the 1918 Act provides:

(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; but when in connection with the reorganization, merger, or consolidation of a corporation a person receives in place of stock or securities owned by him new stock or securities of no greater aggregate par or face value, no gain or loss shall be deemed to occur from the exchange, and the new stock or securities received shall be treated as taking the place of the stock, securities, or property exchanged.

Under the authority of the Revenue Act of 1918 the Commissioner, with the approval of the Secretary of the Treasury, promulgated Regulations 45. Article 1567 of those regulations, as amended by T. D. 2924; Cumulative Bulletin No. 1 (Apr.-Dec., 1919), p. 44, provides in part as follows:

ART. 1567. *Exchange of stock for other stock of no greater par value.*—In general where two (or more) corporations unite their properties, by * * * (b) the sale of its property by B to A and the dissolution of B, * * * no taxable income is received from the transaction by A or B or stockholders of either, provided the sole consideration received by B and its stockholders in * * * (b) * * * is stock or securities of A, * * * in any case of no greater aggregate par or face value than the old stock and securities surrendered. * * *

The respondent argues that the transaction by which the petitioner in 1920 acquired the assets of the two Wooster companies falls squarely within the provisions of the above quoted regulation; that the petitioner issued shares of its own capital stock to the two Wooster companies, which, in turn, distributed them to their stockholders; and as to all intents and purposes the transaction is the same as though the petitioner had issued its own shares of stock to the stockholders of the two Wooster companies in exchange for their interests in those companies. He further argues that this amounted to a consolidation of the three corporations within the intendment of the Revenue Act of 1918 and that the rule in the *Sansome* and *Georday* cases, *supra*, is applicable here, namely, that where there is a consolidation of corporations the earned surplus or earned surpluses of the consolidating corporations become a part of the earned surplus of the consolidated corporation.

The evidence does not show what bookkeeping entries were made by the petitioner corporation when it took over the assets of the two Wooster companies and it is not clear that such bookkeeping entries would be material in this proceeding. At the hearing of this proceeding the petitioner was apprised of the Government's contention that the transactions by which the petitioner acquired the assets of the two Wooster companies were reorganizations within the meaning of the Revenue Act of 1918. The petitioner has pointed out that in the Revenue Act of 1921 and later revenue acts the term "reorganization" has been defined, whereas it was not defined by the Revenue Act of 1918. These differences do not, however, in our opinion, warrant a conclusion that the respondent's regulation, article 1567 of Regulations 45, is inapplicable here. We are of the opinion that the proof does not show error on the part of the respondent in treating the earned surpluses of the two Wooster companies as earned surplus of the petitioner following the acquisition of the assets of those companies.

The petitioner and the respondent have submitted in evidence alternative methods of computing the earned surplus of the petitioner at December 31, 1936. Most of the difference in treatment is ascribable

to the treatment of the earned surpluses of the two Wooster companies as at the date those companies sold all their assets to the petitioner. The respondent contends, and we think correctly, that the earned surplus of the petitioner may not be reduced by reason of a payment of dividends when there were no accumulated earnings out of which the dividends could be paid. See *Great Lakes Coca Cola Bottling Co.* v. *Commissioner* (C. C. A., 7th Cir.), 151 Fed. (2d) 174.

Section 26 (c) (3) of the Revenue Act of 1936, as amended, provides for a credit in the case of a deficit in accumulated earnings "if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and profits, and if such provision was in effect prior to May 1, 1936."

Section 8623–38 of the General Code of the State of Ohio, effective from May 23, 1931, through 1937, reads in material part as follows:

SEC. 8623–38. Dividends. (a) A corporation may declare dividends payable in cash, shares, or other property out of the excess of the aggregate of its assets less the deductions hereinafter required over the aggregate of its liabilities plus stated capital.

(b) In computing the excess of the assets, deductions shall be made for depletion, depreciation, losses, and bad debts. In computing the excess of assets for the purpose of determining the fund available for a dividend payable otherwise than in shares of a corporation deduction shall also be made for the unrealized appreciation, if any, appearing on its books unless the amount thereof shall have been transferred to or included in stated capital. If its articles so provide, a corporation whose business consists substantially of the exploitation of wasting assets, may pay dividends without making deduction for the depletion of such assets resulting from lapse of time or from the consumption or sale of such assets incidental to their exploitation.

(c) No corporation shall declare or pay a dividend in cash or other property when there is reasonable ground for believing that it is unable or, by the payment of the dividend, may be rendered unable to satisfy its obligations and liabilities.

(d) Whenever a dividend is paid, in whole or in part, out of other than earned excess of assets appearing on the books of the corporation at the time of the declaration of such dividend, the shareholders receiving such dividend shall be notified as to its source.

The stipulation of the parties was with reference to paragraphs (a) and (b) of the above section. The petitioner submits that under such provisions it was prohibited from paying dividends during the year 1937. On brief the petitioner submits that "it was not required to distribute any portion of its undistributed net income for 1937 which amounted to $57,355.77." Section 26 (c) (3), *supra*, refers to a case where a corporation is "prohibited" by a provision of law from the payment of dividends. We do not think the proof in this case shows that the petitioner was prohibited from the payment of a dividend equaling its undistributed earnings of 1937.. The evidence indicates that it had a paid-in surplus during the year of $112,139.48. No provision of the Ohio statutes has been brought to our attention which

would prohibit the petitioner from paying dividends out of its paid-in surplus. We think, therefore, that the proof does not show either that the petitioner had a deficit in accumulated earnings and profits at December 31, 1936, or that it was prohibited by law from distributing to its stockholders the amount of the undistributed earnings for 1937.

In its income tax return for 1938, Docket No. 5738, the petitioner claimed a credit equaling 2½ percent of the adjusted net income, in accordance with section 13 (c) (2) (B) of the Revenue Act of 1938. The contention of the petitioner is that it had a deficit in its accumulated earnings and profits at the close of 1937 of an amount in excess of its adjusted net income for 1938, namely, $87,338.75. The answer to this question is in part dependent upon the amount of the deficit in accumulated earnings and profits at December 31, 1936. Petitioner has submitted no evidence with respect to the deficit at December 31, 1937, in addition to that which was submitted for the purpose of establishing a deficit in its earnings and profits at December 31, 1938. In its brief the petitioner does not mention its claim for this credit for 1938. Since we have held that the petitioner did not have a deficit in its earnings and profits at December 31, 1936, and we have found that the petitioner was in a far better financial condition at December 31, 1937, than it was at the close of the prior year, the claim of the petitioner that it was a deficit corporation at the close of 1937 is not substantiated. The respondent did not err in computing the deficiency in income tax for 1938.

*Decisions will be entered for the respondent.*